**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LISA BAISA, | § | |
| | § | |
| v. | § | NO.  A-05-CA-248 SS |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint (Clerk's Doc. No. 1);  Plaintiff's Brief (Clerk's Doc. No. 9);  Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 12); and the Social Security Record filed in this case  (Cited as "Tr.").  The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  PROCEDURAL HISTORY**

On August 8, 2002, Plaintiff Lisa Baisa ("Plaintiff") applied for Disability Insurance Benefits ("DIB") and was denied initially and again upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 16, 2004.  The ALJ denied Plaintiff benefits in a decision issued July 29, 2004.  Plaintiff appealed this decision to the Appeals Council, and submitted additional evidence for review.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 8, 2005.  On April 7, 2005, Plaintiff brought this action

pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II.  ISSUES PRESENTED

Plaintiff raises the following issues: 1) whether there is substantial evidence to support the ALJ's residual functional capacity determination and 2) whether the ALJ properly assessed Plaintiff's credibility and discounted it for legally sufficient reasons.

## III.  STATEMENT OF THE CASE

Plaintiff asserted that she was unable to engage in substantial work activity since August 22, 2001, due to nerve damage from radiation therapy for breast cancer, three ruptured discs, borderline intelligence, and depression.  Plaintiff was represented at the hearing by Mary Ellen Felps.  A vocational expert also testified at the hearing.

### A.    Plaintiff's Testimony

Plaintiff was 39 at the time of the hearing and testified that she lived with her husband and two children.  Tr. 699-700.  Regarding her educational background, Plaintiff stated she completed the ninth grade and, subsequently, got her GED.  Tr. 699.

Plaintiff testified that she worked for UPS five hours a day, five days a week from 1999 until 2001.  Tr. 700.  Her job at UPS consisted of running the register, lifting the packages onto the conveyor belt behind her, and loading the packages into a trailer.  *Id.*   Before that Plaintiff testified she worked for Caliber Logistics for two or two-and-a-half years, where she stacked packages of computers, weighing 35 to 70 pounds.  Tr. 700-01.  Plaintiff stated she previously worked for Dell Computers where she did three different jobs:  picking parts up off the conveyor belt, inspecting parts, and packing computers to meet orders.  Tr. 702-03.

Plaintiff testified that she is unable to work because she needs back surgery and has not had it. *Id.* Plaintiff stated she had back pain in her middle and lower back that is constant and is aggravated by sitting or standing for a long time or any "wrong movement." Tr. 704. According to Plaintiff, she had inflamation in her breast after the month of radiation treatment, so she had some intercostal nerve back injections. *Id.* Because of the inflamation Plaintiff had in her breast for five or six months, Plaintiff testified that she could not handle the back surgery. Tr. 705. For management of the pain in her back, Plaintiff testified she sees a doctor who gave her steroid injections in her back, but those did not help with the pain. *Id.* She also diagnosed herself with depression because she stated she was not happy with herself and feels that everything is against her. *Id.* However, Plaintiff has not received any treatment for her self-diagnosed depression. *Id.*

Plaintiff stated that the only way she can only sit is on the edge of a seat, while leaning on her arms, however, she testified that she might be able to sit in a straight chair without having to lean on her arms. Tr. 709-10. She stated that she could only sit for 15 minutes before she has to get up and move around. Tr. 708. She claimed that she can only stand for 20 or 25 minutes before she has to sit back down. *Id.* Plaintiff testified that she sometimes "throws [her] back out." Tr. 709. She claimed she could only walk 15 or 20 minutes before she has to stop. *Id.* Plaintiff testified the largest amount of weight that she could lift was 5 pounds. *Id.* She also stated she has troubles getting dressed because her lower back starts "pounding" and her heart races. *Id.* Additionally, Plaintiff testified that she sometimes has trouble bathing because of her lower back pain and increased heart rate. *Id.* Plaintiff claimed she lies down two or three times a day for thirty minutes each time, depending on how she feels. Tr. 710-11. She testified that she had days once or twice a month

where the pain is not as bad and she can do more, but she has some days that she has to lie down more often.  Tr. 712.

Plaintiff testified that she lives in a house, but does not do any of the yard work, sometimes cooks, does not do any housework, and sometimes does the grocery shopping.  Tr. 707-08.  She states that she has a driver's license but only drives sometimes.  Tr. 708.

She stated that she was taking pain medication, anti-inflammatories, and muscle relaxers, but the last time at the end of 2003 she went to the doctor he would not prescribe her any more because her liver enzymes were abnormal.  Tr. 706-07.  Plaintiff testified that the prescription medication made her sleep more than she does on the over-the-counter medication.  Tr. 713.  As a result, she has just been taking over-the-counter medications for a year.  Tr. 707.

## B.    Vocational Expert Testimony

Donna Eager, a vocational expert ("VE"), classified Plaintiff's previous work experience as an order picker as unskilled, medium work.  Tr. 713.  She testified that Plaintiff's past work as a shipping checker was semiskilled and light.  *Id.*  As for Plaintiff's job as a shipping clerk, the V.E. stated that was medium and skilled.  *Id.*  The V.E. testified that Plaintiff's job as a parcel post clerk was heavy and semiskilled.  *Id.*

The ALJ then posed a hypothetical question to the V.E. that asked her to consider a hypothetical person of the same age and with the same educational and work experience as Plaintiff. Tr. 714.  The ALJ asked the V.E. to assume the person could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours a day, sit for 2 hours, and pushing and pulling would be limited to the above-mentioned weights.  *Id.*  The ALJ stated that because of the person's pain and depression, the person would be limited to understanding, remembering, and carrying out

routine step instructions. *Id.* The ALJ added that the person could respond appropriately to supervisors and co-workers and could do a job that did not require independent decision making. *Id.* The V.E. stated that with these limitations the person could not perform Plaintiff's past work. *Id.* However, the V.E. testified that there are jobs in significant numbers in the national economy such a hypothetical person could do, including light, unskilled jobs such as a counter clerk, a cashier, and hand packager. *Id.*

## C.    Medical Records

The following is a summary of Plaintiff's medical records that are relevant to the issues presented in the instant case. The relevant time period is from August 22, 2001, the alleged onset of Plaintiff's disability, through December 31, 2006, when her insured status expires. Thus, Plaintiff must demonstrate that she was under a disability on or before December 31, 2006, in order to receive benefits. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status").

### 1.    Lower Back Pain

The record evidence suggests that Plaintiff first sought medical treatment for her back problem on September 21, 2001, when she saw Dr. Anand Joshi. After examining Plaintiff, Dr. Joshi felt Plaintiff's symptoms were the result of a disc herniation. Tr. 336. On October 8, 2001, and November 5, 2001, Dr. Joshi gave Plaintiff epidurals for her pain. Tr. 325, 327. Dr. Joshi noted Plaintiff had moderate relief in her back and leg symptoms after two epidurals and found the same tenderness on palpation and increased pain with standing exercises and noted Plaintiff's doctor might consider surgical intervention. Tr. 329. Plaintiff saw Dr. Scott Spann on January 3, 2002, and related that she injured her back in August of 2001 by lifting a package weighing 55 lbs. Tr. 225.

After examining an MRI on January 3, 2002, Dr. Spann found scoliosis and degenerative disc disease. Tr. 224.

Plaintiff participated in a work hardening program, after which the physical therapist stated Plaintiff worked hard and would experience an increase in pain after repetitive lifting from the floor to waist level and if she stood or carried something for a prolonged period.  Tr. 364.  Plaintiff stated after the treatment she noticed improvements in her overall health and her medically diagnosed physical condition.  *Id.*  The physical therapist stated Plaintiff reached a medium physical demand capacity level, meaning she could lift 21 to 50 pounds on all levels on an occasional basis.  *Id.*

On April 2, 2002, Plaintiff had a functional capacity assessment in which it was noted she was able to complete all of the activities and she could perform a restricted medium level of work, as defined by the U.S. Department of Labor, and unrestricted light level of work for the vertical and horizontal work planes.  Tr. 479.  The assessment further suggests that Plaintiff not bend, climb, or kneel, and she limit sitting and walking to between thirty and sixty minutes, and standing to no more than an hour.  Tr. 480.  The evaluator felt Plaintiff's requirements for crouching should be restricted on a repetitive basis, the requirements for reaching, sitting, standing, and stooping should be restricted, and Plaintiff should only be asked to walk on flat surfaces.  *Id.*

Dr. Joshi examined Plaintiff numerous times, and found that standing exercises increased her pain, although Dr. Joshi did not find any neurological problems.  Tr. 319, 322.  Dr. Patterson conducted a CT scan and found a small tear near L4-5 and a more extensive tear at L5-S1.  Tr. 320. On August 12, 2002, Plaintiff complained of numbness and tingling in her legs and lower back, radiating pain from her lower back to her feet, pressure and stabbing pain in her lower back, and an inability to sleep, due to the numbness.  Tr. 222.  Dr. Spann recommended that Plaintiff undergo

surgery to fuse two discs because she had lower back pain that was continuing to get worse and more conservative treatment such as epidural injections, physical therapy, and pain medication were not causing a reduction in her pain. Tr. 221.

Dr. Clark reviewed Plaintiff's medical records on November 12, 2002, and found that Plaintiff was exaggerating her symptoms because her complaints are intermittent and vary and the x-ray findings are minimal. Tr. 527. Dr. Clark found Plaintiff's condition to not be severe. *Id.*[1] Dr. Vandel, Plaintiff's treating doctor assumed Plaintiff's reported chronic chest pain was the result of her radiation therapy, but he could not determine the source of her abdominal pain. Tr. 207.

### 2.      Breast Cancer and Effects

A mammogram of Plaintiff's right breast on November 14, 2001, showed a suspicious mass that warranted further inspection. Tr. 280. A biopsy of Plaintiff's right breast showed cancer, but the cancer was not invasive. Tr. 285. Dr. Clark performed a lumpectomy on Plaintiff on February 15, 2002. Tr. 600. Plaintiff had 33 radiation treatments from April 11, 2002 to May 31, 2002. Tr. 289. From April 15, 2002 to May 20, 2002, Dr. Nuesch noted that Plaintiff was tolerating the radiation with mild side effects. Tr. 257-63. On May 31, 2002, Dr. Nuesch stated Plaintiff had tolerated the treatments "extraordinarily well" and had the expected reactions of skin redness and peeling. Tr. 290. Dr. Nuesch stated he expected Plaintiff to make a full recovery in 6 to 18 months time. *Id.* Although Plaintiff's breast was almost healed, Plaintiff reported persistent pain and that steroids were not providing much relief, so Dr. Neusch referred her to Dr. Mahendru on July 15, 2002, to determine the etiology of the pain. Tr. 249. On July 25, 2002, Plaintiff reported to Dr.

---

[1]Although this conclusion is inconsistent with Dr. Spann's conclusions, Dr. Spann based his opinion on Plaintiff's subjective complaints, which the ALJ did not find to be credible. Tr. 20-21.

Mahendru that she has had breast pain and pain in her armpit since her lumpectomy and radiation that is a 7 out of a 10, and is exacerbated any time she moves her upper extremities.  Tr. 523.  Dr. Mahendru gave Plaintiff nerve blocks on August 21st and September 16th.  Tr. 513.  On September 17, 2002, Dr. Nuesch stated Plaintiff was undergoing pain therapy, but doing better and Plaintiff's mammogram showed no recurrence of breast cancer.  Tr. 246.  The doctor found Plaintiff's breast was healing nicely from the surgery.  *Id.*

### 3.     Mental Health

Plaintiff had a mental health evaluation on February 21, 2002.  Tr. 495.  Plaintiff reported her pain was a 7 and that her pain limits her daily functioning by 50%.  Tr. 496.  Plaintiff stated she was depressed and anxious.  *Id.*  Dr. Ghormley, an examining psychologist, diagnosed Plaintiff with pain disorder, moderately severe major depressive disorder, back injury, and psychological stress manifested by depression and anxiety because of her satisfaction over her level of functioning and stress from financial and family problems.  Tr. 499.  Dr. Ghormley assessed Plaintiff with a GAF of 55.  *Id.*

On April 8, 2003, Dr. Tutson interviewed Plaintiff and did a mental status exam on her.  Tr. 311.  Plaintiff stated her back surgery has been delayed because of her lumpectomy and radiation treatment.  *Id.*  Plaintiff related that she fell into a "deep depression" after being diagnosed with breast cancer, so Plaintiff's primary care physician prescribed her an antidepressant, but Plaintiff did not find the antidepressants helpful.  *Id.*  At the time Plaintiff was not seeing a psychiatrist, nor was she on antidepressants.  Tr. 313.  Plaintiff was released to work in January 2002 after her back injury, but she was then diagnosed with breast cancer.  *Id.*  Plaintiff related that her pain from the radiation treatment had diminished, but she still had back pain.  *Id.* The doctor saw no evidence of pain in

Plaintiff's gait or behavior during the interview. Tr. 314. Dr. Tutson found Plaintiff to have coherent thoughts, to be alert and oriented, to have mildly or moderately impaired memory and mildly impaired concentration. *Id.* The doctor found Plaintiff had good judgment and insight and had average intellectual functioning based on her vocabulary, grammar, content of interview, and past history. Tr. 315. Plaintiff reported she bathed and dressed without assistance, cooks, cleans, and drives on a limited basis, and gets her kids ready for school, but then goes back to bed because of pain. *Id.* Dr. Tutson found Plaintiff had fair social skills and did not find any significant problems with Plaintiff's concentration, persistence, and pace. Tr. 316. Dr. Tutson found Plaintiff had mood disorder as a result of a medical condition, that was a major depressive type, severe chronic back pain, severe to catastrophic psychosocial stressors, financial problems, occupational problems, limited vocational choices, marital problems, life threatening illness, stressors because of her husband's recent back surgery, and a GAF of 45 with 50 being the highest during the year. *Id.* Dr. Tutson gave Plaintiff a psychiatric perspective of fair given her psychosocial stressors and lack of treatment for her depression and found Plaintiff could manage her own funds and function adequately. Tr. 317.

Dr. Kang, a consulting physician, did a psychiatric review of Plaintiff's records from August 22, 2001, to May 13, 2003, and determined Plaintiff did not have a severe medical impairment and had a mood disorder as a result of Plaintiff's general medical condition. Tr. 295. Dr. Kang found Plaintiff had no restrictions in daily living or maintaining social functioning. Tr. 305. He found she had mild difficulties in maintaining concentration, persistence, or pace. *Id.* Dr. Kang found Plaintiff's mood disorder to not be severe. Tr. 307.

Dr. Harrell performed a psychological evaluation on Plaintiff on February 27, 2003. Tr. 180. The doctor found Plaintiff to have borderline intelligence and a verbal IQ score of 81. Tr. 181. Dr.

Harrell noted she had good language abilities that were at the high school level, but her arithmetic was at a 6th grade level. *Id.* Plaintiff reported to Dr. Harrell that she paces a lot because sitting and standing are painful; she rarely drives because she gets disoriented; and she cannot concentrate on a task. *Id.* Dr. Harrell diagnosed Plaintiff with major depressive disorder and borderline intellectual functioning and assessed her with a GAF of 55. Tr. 182.

### 4.    Application for Reconsideration

In reviewing Plaintiff's neurological complaints, Dr. Heck, a consulting neurologist, found no evidence in Plaintiff's application for reconsideration of neurological evidence consistent with her neck, thoracic, bilateral extermity, or right breast pain. Tr. 293. Dr. Ibakchi, a medical consultant, felt Plaintiff's application for reconsideration should be denied because Plaintiff's pain in her right breast had improved; she had no recurrence of cancer; and evidence of gastric problems, all of which Dr. Ibakchi found to be non-severe on May 21, 2003. Tr. 291.

On June 23, 2003, Dr. Aupta reviewed Plaintiff's case file after she asked to have it reviewed because she alleged her condition had worsened, but the doctor found that there was no evidence of a worsening of her condition. Tr. 184. Dr. Awalt, who also reviewed Plaintiff's case file, stated that Plaintiff's complaints of damage to her breast, chest, and right arm area due to radiation and chronic tiredness were non-severe. Tr. 185. He specifically noted with regard to her breast pain that the cause was unknown and there had been no tumor recurrences or evidence of metastatic disease. *Id.* He also stated there was no explanation for her abdominal pain or fatigue. *Id.*

## IV.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the medical expert's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Based upon the medical evidence, the ALJ determined that Plaintiff had degenerative disc disease, abdominal pain, depression, and borderline intelligence. Tr. 20.  The ALJ found these impairments to be severe but not severe enough to meet or medically equal any impairment on the Listing of Impairments in the Social Security Regulations.  *Id.*

Although record evidence supports the conclusion that Plaintiff could perform a restricted range of medium work, the ALJ – taking a conservative approach – determined instead that Plaintiff could only perform light work, (based on Plaintiff's allegations of ongoing back and abdominal pain. *Id.*  The ALJ found Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand, sit, and walk 6 hours per workday, push and pull based on the lifting and carrying weight limits, and understand, remember, and carry out routine, step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making.[2]  *Id.*  Based on the V.E.'s testimony, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 23.  The ALJ found Plaintiff could perform a significant range of light work, and based on the V.E.'s testimony there are jobs in significant numbers that Plaintiff is capable of performing.  Tr. 23-24.  The ALJ thus concluded that Plaintiff was not under a disability as defined in the Social Security Act.  Tr. 24.

---

[2]The ALJ noted that the State Agency physician came up with different numbers, but the ALJ had updated evidence that was not available to the State Agency physician.  Tr. 22.

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  However, the  reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  *Martinez*, 64 F.3d at 174.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed.  *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI.  ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity.[3]  Second, the claimant  must have an impairment of combination of impairments that is severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to her past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.*  If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

---

[3] Substantial gainful activity is work activity that is both substantial and gainful.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

**A.     Did the ALJ's Finding Regarding Plaintiff's Residual Functional Capacity[4] Have a Proper Basis?**

Plaintiff alleges that the ALJ: (1) did not evaluate Plaintiff's conditions during the entire period of alleged disability or consider the conditions in combination; (2) did not properly consider the effect of Plaintiff's cancer; (3) disregarded Dr. Kang who said Plaintiff had an affective disorder; (4) misinterpreted the records from 2002 regarding the level of work of which Plaintiff was capable; (5) did not determine that Plaintiff could maintain employment; (6) improperly determined there was work in significant numbers; and (7) did not consider all of the evidence in determining Plaintiff's residual functional capacity ("RFC").   In response, Defendant argues that the ALJ properly considered all of the evidence and his assessment of Plaintiff's RFC is supported by substantial evidence.

**1.     Did the ALJ fail to evaluate Plaintiff's conditions for the entire period of alleged disability or fail to consider the conditions in combination?**

Plaintiff alleges, without explanation, that the ALJ did not evaluate her conditions for the entire period of alleged disability or in combination. *See* Plaintiff's Brief, at 10-11.  In the text of his decision, the ALJ spends three pages discussing Plaintiff's alleged pain, alleged functional limitations, the medical records, and the status of her mental and physical health each year, covering the period from August of 2001, the alleged onset of disability, and ending in 2004, where the evidence in the record stops.  Tr. 20-22.  The ALJ clearly noted he was supposed to consider the Plaintiff's impairments in combination and did so.  *See* Tr. 20.  Thus, the Court does not find any basis for Plaintiff's arguments in this regard.

---

[4]Residual functional capacity is the maximum a plaintiff could do despite her limitations.  20 C.F.R. § 404.1545.

**2.      Did the ALJ not properly consider the effect of Plaintiff's cancer?**

Plaintiff alleges the ALJ mentioned Plaintiff's breast cancer one time, and improperly found that Plaintiff's fatigue, radiation dermatitis, right breast and armpit pain, and depression did not prevent her for working for 12 months.  *See* Plaintiff's Brief, at 10.  Plaintiff's alleged disability is a result of nerve damage from radiation therapy, lower back pain, borderline intellectual functioning, and depression.  As a result, the Court sees no reason for Plaintiff taking issue with the ALJ mentioning that Plaintiff had breast cancer one time in his opinion.  The related impairment the ALJ was supposed to consider was the effect of the radiation therapy and the pain Plaintiff allegedly experienced, which the ALJ discussed at length. Tr. 21-22.  In regards to the effect the radiation therapy had, Plaintiff's treating doctor expressed his opinion at the beginning of the radiation therapy that Plaintiff would be able to return to full time work in 6 weeks and Plaintiff's treating doctor for her pain filled out a worker's compensation sheet saying Plaintiff could not work from the end of December 2002 to the end of January 2003.  Tr. 509, 546.  Even giving Plaintiff the benefit of the doubt, and assuming she could not work from the beginning of her radiation therapy in April until the end of January of the following year, that does not mean she is disabled, because this time period is less than a year, and was the time during which Plaintiff was recovering from surgery.  She is no longer recovering from that surgery.  Further, there is no evidence in the record that a doctor has opined that Plaintiff cannot work in her current condition.  Thus, the ALJ's decision is supported by substantial evidence.

**3.      Did the ALJ improperly disregard Dr. Kang's opinion?**

Plaintiff argues that the ALJ disregarded Dr. Kang's opinion that Plaintiff had affective disorder and claimed that notes in the record showed Plaintiff might have a psychiatric condition that

met the listings.  Tr. 10.  In response, Defendant argues that Dr. Kang's evaluation found Plaintiff's condition to not meet the listings and found her impairments were not severe.

After reviewing Plaintiff's medical records, Dr. Kang found that Plaintiff did not have a severe medical impairment.  Tr. 295.  In order to meet the severity of the listing requirements, the disorder must meet the requirements of A and B or C.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.  Dr. Kang noted that Plaintiff had a mood disorder, which is classified as an affective disorder under 12.04, meeting the requirements of A.  *See* Tr. 298; 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(A).  To meet B, Dr. Kang would have had to find that Plaintiff's mood disorder resulted in two of the following: (1) marked restrictions of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(B).  However, Dr. Kang determined that Plaintiff had no restrictions in daily living or maintaining social functioning and no episodes of decompensation and mild difficulties in maintaining concentration, persistence, or pace.  Tr. 305. Clearly, Dr. Kang did not find that Plaintiff met the requirements of B.  To meet the requirements of C, Dr. Kang would have had to find:

> medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.      Repeated episodes of decompensation, each of extended duration; or
>
> 2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

16

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(C). Dr. Kang noted that the evidence did not meet the C criteria, and further noted that Plaintiff's mood disorder was not severe. Tr. 306-07.

Plaintiffs state that the comment by Linda Douglas asking for medical advice in reconsidering Plaintiff's claims that Plaintiff's mood disorder "appears severe-possible RFC" means that Plaintiff might have a psychiatric condition that meets the listing. This is clearly wrong. The statement was made by an examiner, not a doctor. Further, the comment is susceptible to more than one reading. For example, it could mean that Ms. Douglas believed that Plaintiff's mood disorder "appears severe," but that Ms. Douglas believes it may nevertheless be "possible" that Plaintiff has the residual functional capacity ("RFC") to work. Since Dr. Kang did not find Plaintiff's mood disorder to be severe or to meet the listings and the other comment is unclear and not made by a doctor, there is no evidence that the ALJ improperly disregarded Dr. Kang's analysis or the other comment.

**4. Did the ALJ misinterpert the records regarding the level of work Plaintiff was capable of performing?**

The Plaintiff alleges the ALJ improperly stated that Plaintiff could perform medium work, when she really could only perform light work. *See* Plaintiff's Brief, at 13. The ALJ properly noted that the functional capacity assessment performed in April of 2002 found that Plaintiff could perform restricted medium work and unrestricted light work. Tr. 21, 479. Additionally, a physical therapist at the work hardening program stated that Plaintiff had reached a medium physical demand capacity level. Tr. 364. However, the ALJ stated he gave Plaintiff the benefit of the doubt regarding her pain and functional capacity and found that Plaintiff could perform a significant range of light work. Thus,

17

the ALJ correctly noted the result of the assessment in 2002 and was conservative in his determination of the work Plaintiff could perform in deference to her complaints.

### 5.   Did the ALJ err in not making a specific finding that Plaintiff could maintain employment?

Plaintiff further claims that the evidence shows Plaintiff would not be able to maintain gainful work because her back and the effects of the radiation cause her "on-going pain and fatigue." Defendant asserts that Plaintiff had not presented evidence that she could not sustain work at a restricted light level or that her condition changes in intensity.

The Fifth Circuit considered this issue in *Watson v. Barnhart*, where the ALJ found that the claimant had a severe degenerative disc disease, but was not disabled and had an exertional capacity for medium work. 288 F.3d 212, 215 (5th Cir. 2002). The claimant argued that the ALJ erred in failing to make a determination that he could maintain employment. *Id.* at 217. The Fifth Circuit agreed. *Id.* at 218. This issue, however, was revisited in *Frank v. Barnhart*, 326 F.3d 618, 619-20 (5th Cir.2003). In *Frank*, the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Id.* at 619. The Fifth Circuit further explained:

> *Watson* required the ALJ to make a finding as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the exertional, as opposed to non-exertional (e.g., mental illness) nature of the claimant's alleged disability. Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination.

> Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required. Frank did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard.

*Id.* at 619-20.

While it is true that in general determining a claimant's residual functional capacity requires consideration of whether a claimant is able to perform work duties on a continuous basis, there is no requirement that an ALJ make an explicit "regular and continuing basis" finding absent evidence that the claimant's symptoms are of a waxing and waning nature, such that the impairment interferes with the claimant's ability to maintain employment on a continuing basis. *Campbell v. Barnhart*, 374 F.Supp.2d 498, 502-03 (E.D. Tex. 2005). Here, there was no requirement for the ALJ to make a separate finding that Plaintiff could maintain employment because there was no evidence that Plaintiff's impairments were the type of intermittent impairments that would prevent her from working on a continuing, regular basis.

Plaintiff complained of nerve damage from radiation, lower back pain, borderline intelligence, and depression. Plaintiff testified that she worked for UPS five hours a day, five days a week from 1999 until 2001. Tr. 700. While she was working for UPS she injured her back for the first time, but she stated the numbness and tingling in her neck and upper back were not preventing her from working, only causing her difficulty in sleeping. Tr. 227. Plaintiff never argued or offered evidence that her problems waxed or waned or that she would be unable to work a few weeks every month. In fact, in Plaintiff's brief, Plaintiff describes the pain as "on-going." *See* Plaintiff's Brief, at 15. No doctor proffered any opinion that plaintiff was unable to sustain full-time employment on a sustained

basis. Under these circumstances, an ALJ's citation to the appropriate regulation and Social Security Ruling suffices to conclude that the claimant can perform work on a regular and continuing basis. *Thomas v. Comm'r of Social Sec. Admin.*, No. 1:03-CV-925, 2005 WL 588752, at *6 (E.D. Tex. Jan. 3, 2005). Consequently, the ALJ did not err by failing to make a separate finding regarding Plaintiff's ability to maintain employment for a significant period of time. *See Sanchez v. Barnhart*, 75 Fed. Appx. 268, 270 (5th Cir. 2003).

**6.     Was the ALJ's determination that there was work in significant numbers supported by substantial evidence?**

Plaintiff summarily states that Defendant did not prove there are jobs in significant numbers that Plaintiff can perform. Defendant argues that the ALJ properly relied on the V.E.'s testimony regarding available jobs for a hypothetical individual with Plaintiff's limitations.

The ALJ posed a hypothetical question to the V.E. that asked her to consider a hypothetical person of the same age and with the same educational and work experience as Plaintiff. Tr. 714. The ALJ asked the V.E. to assume the person could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours a day, sit for 2 hours, and pushing and pulling would be limited to the above-mentioned weights. *Id.* The ALJ stated that because of the person's pain and depression, the person would be limited to understanding, remembering, and carrying out routine step instructions. *Id.* The ALJ added that the person could respond appropriately to supervisors and co-workers and could do a job that did not require independent decision making. *Id.* In response, the V.E. testified that such a hypothetical individual could be a counter clerk, of which there are 100,000

jobs available nationwide, a cashier, of which there are 750,000 jobs available nationwide, or unskilled light hand packaging of which there are 150,000 jobs available nationwide.[5]  Tr. 714.

Clearly, this number meets the requirement of available jobs in significant numbers.  However, the Plaintiff seems to also be arguing that the hypothetical question posed by the ALJ to the V.E. was improper because the ALJ found Plaintiff's borderline intellectual functioning and depression to be severe and the only relevant limitation was that the job could only involve routine, step instructions and could not involve independent decision making.

A hypothetical question posed by an ALJ to a V.E. is considered defective unless: (1) the assumptions in the question reasonably incorporate all of the disabilities that the ALJ has recognized; and (2) the Plaintiff has been given an opportunity to correct any problems with the question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994);  *Brown v. Barnhart*, 285 F.Supp.2d 919, 933 (S.D. Tex. 2003).  The ALJ unquestionably intended the limitation of routine, step instructions to accommodate Plaintiff's depression, because he said as much in the question.  Tr. 714.  As for the ALJ finding Plaintiff's borderline intellectual functioning to be severe, limiting jobs to those with routine, step instructions and no independent decision making reasonably incorporates this impairment.  Additionally, when Plaintiff's attorney asked if the limitations covered Plaintiff's borderline mental functioning, the ALJ clearly indicated he had covered this with the routine step instructions and independent decision making.  Tr. 719.  In regards to the second prong of the test, Plaintiff was given an opportunity to question the V.E. after the ALJ did so.  Tr. 715-20.  Plaintiff's attorney asked the V.E. about the effect of having to miss a couple of weeks every few months, which

---

[5]If the ALJ had determined that Plaintiff's limitations included bending or stooping, this number would been reduced by 25%, however, the ALJ did not find Plaintiff needed this limitation. *See* Tr. 717.

the V.E. agreed would probably result in firing such an employee.  Tr. 716.  However, as discussed *supra*, Plaintiff has not presented any evidence and there is no evidence in the medical record showing Plaintiff would need to miss work a couple of weeks every few months.  The V.E. testified that the ALJ's limitations already covered Plaintiff's problems with temperature, irritability, concentration, and borderline mental functioning.  Tr. 717-20.  Thus, the number of jobs meet the requirement and the hypothetical question appears to meet both prongs of the test.

**7.    Did the ALJ consider all of the available evidence in making his RFC determination?**

Plaintiff argues that the ALJ did not follow proper procedure in determining Plaintiff's RFC and that the ALJ did not analyze Plaintiff's complaints of pain.  Plaintiff attempts to show the ALJ's determination was improper by contrasting Plaintiff's testimony regarding her pain and ability to function, which the ALJ found not to be credible, as discussed *infra*, with the ALJ's determination of Plaintiff's RFC.  The Defendant, in response, asserts that the ALJ properly followed procedure in determining Plaintiff's RFC.

The ALJ's finding that Plaintiff had the residual functional capacity for light work with some limitations is supported by the opinions of state medical consultants, examining doctors and physical therapists as well as other medical evidence, such as x-rays and functional capacity assessments.  No physician has indicated that Plaintiff's physical impairments render her unable to work at all[6] or preclude her from engaging in restricted light work.

---

[6]Dr. Nuesch, who was treating Plaintiff with radiation for her breast cancer, stated on April 25, 2002,  he expected Plaintiff would be able to go back to work full time in 6 weeks.  Tr. 546.  Dr. Joshi, who was treating Plaintiff for her pain, filled out a worker's compensation form on December 31, 2002, stating that she could not return to work before January 31, 2002.  Tr. 509.  As discussed *supra*, this need to miss work for less than a year was part of Plaintiff's recovery from her breast surgery and radiation.

In regards to Plaintiff's exertional limitations, an x-ray on September 21, 2001, shows Plaintiff had a disc herniation for which she received epidurals that gave her moderate relief.  Tr. 329, 336. Dr. Clark performed a lumpectomy on February 15, 2002, and Plaintiff tolerated radiation therapy from April 15, 2002, to May 20, 2002 with mild side effects.  Tr. 257-63, 600.  Upon Plaintiff's release from the work hardening program, the physical therapist stated Plaintiff reached a medium physical capacity level.  Tr. 364.  Additionally, the functional capacity assessment performed on Plaintiff on April 2, 2002, showed Plaintiff could perform restricted medium work and unrestricted light work.  Tr. 479.  Dr. Joshi examined Plaintiff, during which he noted no lower neurological abnormalities, lumbar discopathy, and Plaintiff's reported tenderness upon palpation and reported pain during standing exercises.  Tr. 322.  Since Plaintiff continued to report pain, despite the epidurals and other conservative attempts to reduce her pain, Dr. Joshi recommended Plaintiff's treating doctor might consider surgery.  Tr. 329.  Dr. Spann also recommended surgery for the same reason.  Tr. 221.  However, it should be noted that these doctors recommended surgery based on Plaintiff's complaints which the ALJ and consulting doctors found not to be credible.[7]  A consulting neurologist found no neurological evidence consistent with Plaintiff's complaint of neck, thoracic, bilateral extremity, or right breast pain.  Tr. 293.  In addition, two medical consultants found Plaintiff's complaints not to be severe.  Tr. 185, 291.  Dr. Clark, a consulting physician, determined Plaintiff was exaggerating her symptoms because her complaints were intermittent and varied and because the x-rays showed minimal neurological abnormalities.  Tr. 527.

---

[7]Plaintiff asserts the ALJ did not consider her complaints of pain, however, as noted *infra*, he noted and analyzed Plaintiff's reported pain, however, he decided that her testimony was not entirely credible.

As has already been noted, although Plaintiff demonstrated she could perform a restricted range of medium work, the ALJ determined Plaintiff could not perform anything more strenuous than light work, because Plaintiff alleges ongoing back and abdominal pain for which she takes over-the-counter medication.  *Id.*  The ALJ found Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand, sit, and walk 6 hours per workday, and push and pull based on the lifting and carrying weight limits.

In regards to Plaintiff's non-exertional limitations, Dr. Ghormley evaluated Plaintiff's mental heath and found she had pain disorder, moderately severe major depressive diorder, a back injury, and physchological stress and  gave her a GAF of 55.[8]  Tr. 499.  On April 4, 2002, after Plaintiff had been diagnosed with breast cancer, examined Plaintiff and did not find her to be depressed.  Tr. 266-67.  On April 8, 2003, Dr. Tutson performed a mental status exam on Plaintiff, during which Plaintiff related she was in a deep depression after being diagnosed with breast cancer.  Tr. 311-12.  Dr. Tutson found Plaintiff had coherent thoughts, was alert and oriented, had mildly or moderately impaired memory and mildly impaired concentration.  Tr. 314.  Dr. Tutson also determined Plaintiff had good judgment and insight and had average intellectual functioning based on her vocabulary, grammar, content of interview, and past history.  Tr. 315.  Dr. Tutson noted Plaintiff had fair social skills and did not have any significant problems with concentration, persistence, and pace.  Tr. 316.

─────────────────

[8]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  *See Boyd v. Apfel*, 239 F.3d 698, 699 n.2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)).  A GAF of 55 indicates moderate difficulty in social or occupational functioning, as in few friends or conflicts with peers or coworkers. *Monroe v. Barnhart*, 372 F.Supp. 976, 988 n.14 (S.D. Tex. 2005) (quoting AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 30 (4th ed. 2000)).

Dr. Tutson found Plaintiff had a mood disorder because of her medical condition, severe chronic back pain, severe to catastrophic psychosocial stressors, financial problems, occupational problems, limited vocational choices, marital problems, a life threatening illness, stressors because of her husband's back surgery and a GAF of 45.[9]   Dr. Tutson found Plaintiff had a fair perspective given her psychosocial stressors and lack of treatment for her depression, but that she could manage her funds and function adequately.  Tr. 317.  Dr. Kang, a consulting physician, did a psychiatric review of Plaintiff and determined she had a mood disorder as a result of her medical condition that was not severe.  Tr. 295.  Dr. Kang found Plaintiff had no restrictions in her daily living, no restrictions in her social functioning, and no episodes of decompensation.  Tr. 305.  Dr. Kang found Plaintiff had mild difficulties in maintaining concentration, persistence, and pace.  *Id.*  Another psychological evaluation was performed by Dr. Harrell, who found Plaintiff had borderline intelligence, good language abilities, major depressive disorder, and assessed her with a GAF of 55.  Tr. 181-82.

The ALJ noted that Plaintiff had been assessed with GAFs of 45 and 55 and diagnosed with a mood disorder by examining doctors, but the ALJ found the assessments of the examining doctors to be in conflict with Plaintiff's treating doctors, who did not note any signs of depression or mood disorder.  Tr. 22.  The ALJ pointed out that Plaintiff was not on antidepressants and had not undergone therapy, counseling, or psychiatric care.  *Id.*  Dr. Nelson, who examined Plaintiff after she had had her lumpectomy, reported no signs of depression.  Tr. 266.  Additionally, Dr. Tutson, who gave Plaintiff a GAF of 45, noted Plaintiff showed no evidence of pain during the entire examination,

---

[9]A GAF of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *Ochoa v. Barnhart*, No. Civ. A. SA04CA0888RFN, 2005 WL 2708809, *6 n.84 (W.D. Tex. 2005 Oct. 17, 2005) (quoting AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 30 (4th ed. 2000)).

had coherent thoughts, was alert and oriented, had mildly or moderately impaired memory and mildly impaired concentration, had good judgment and insight, average intellectual functioning, could bathe and dress without assistance, cooked, cleaned, and drove on a limited basis. Tr. 314-15. Dr. Tutson found Plaintiff had adequate social skills and did not find any significant problems with Plaintiff's concentration, persistence, and pace. Tr. 316. Dr. Tutson explained she gave Plaintiff this assessment because of Plaintiff's reported stressors, which the ALJ found to not be entirely credible, as discussed *infra*, and because Plaintiff had not sought treatment for her depression. Dr. Kang, who found Plaintiff had a mood disorder, stated the mood disorder was not severe and that Plaintiff had no restrictions in daily living or maintaining social functioning and no episodes of decompensation. Tr. 305, 307. Dr. Kang found Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. Tr. 305. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff has not demonstrated sufficient functional limitations to support a GAF of 45 or 55.

In social security appeals, the court "does not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Conflicts in the evidence, are for the Commissioner, not the Court, to resolve. *Id*. The functional assessments of the Plaintiff showed she was capable of restricted medium work and unrestricted light work. The ALJ based the limitations he added on Plaintiff's subjective complaints along with the medical records, which he construed in favor of Plaintiff. In regards to Plaintiff's non-exertional limitations, the doctors have found Plaintiff to, at worst, have mildly or moderately impaired memory and mildly impaired concentration. They have found no or very mild restrictions in her daily living and social functioning. Thus, the Court finds that the record reflects substantial evidence that Plaintiff was able

to perform light work with the limitations mentioned *supra*. The ALJ's assessment of Plaintiff's residual functional capacity is consistent with the evidence in the record and constitutes an appropriate resolution of any conflicts in the evidence.

## B.     Did the ALJ improperly discount Plaintiff's credibility?

Plaintiff argues that the ALJ found her testimony was not credible without pointing out any specific discrepancies in her testimony or making any relevant arguments.  In response, Defendant asserts that the ALJ properly considered the evidence in the record and Plaintiff's testimony in assessing Plaintiff's credibility.

Although pain in and of itself can be a disabling condition, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).  In order to prove a disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); 20 C.F.R. § 404.1529 (1997).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Ripley*, 67 F.3d at 556; 20 C.F.R. § 404.1529.  Although the ALJ must consider subjective evidence of pain, it is within his discretion to determine its debilitating nature, and such determinations are entitled to considerable deference.  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).  The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.  When assessing the credibility of an

individual's statements, the ALJ is required to consider:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In accordance with the requirements of the above Social Security rulings and regulations, in determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about her symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the vocational expert.  Although the ALJ noted that Plaintiff complained of pain, the ALJ determined that Plaintiff's alleged symptom-related limitations and subjective complaints were inconsistent with the record evidence and the activities Plaintiff testified she was capable of performing.  Tr. 20-22.  The ALJ provided specific reasons for his credibility determination.  *Id.*

Moreover, the physical therapist at the work hardening program stated Plaintiff had reached a medium physical demand capacity level, and the extensive functional capacity assessment in April 2002 showed Plaintiff could perform a restricted medium level of work and an unrestricted light level of work.  Tr. 364, 479.  A consulting doctor reviewed the medical records and found Plaintiff was exaggerating her symptoms because her complaints were intermittent and varied and the x-ray

findings were minimal.  Tr. 527.  The doctor also found Plaintiff's condition to not be severe.  *Id.*
The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of
severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment
of general nutrition – can itself justify the ALJ's conclusion."  *Hollis v. Bowen*, 837 F.2d 1378, 1384
(5th Cir. 1988).

Moreover, no treating or consulting physician ever pronounced that Plaintiff was unable to
engage in work activity before or after her breast surgery and radiation because of her pain, or any
other impairment.  *See Harper v. Sullivan*, 887 F.2d 92, 96-97 (5th Cir. 1989) (substantial evidence
supported ALJ's finding that claimant's subjective symptomology not credible when no physician on
record stated that claimant was disabled).  In addition, it appears that her conditions are under control
with her medication, since Plaintiff had not regularly sought treatment for her back pain or residual
pain from radiation since 2002 and Plaintiff has not used analgesic pain medication since 2002.  *See
Johnson*, 864 F.2d at 346 (holding that substantial evidence supported finding that claimant was not
disabled where medical records showed that claimant responded to antidepressant medication and
treatment); *Epps*, 624 F.2d at 1270 (conditions controlled or controllable by treatment are not
disabling).

After considering all of the evidence in the record, including Plaintiff's subjective complaints
of pain, the ALJ concluded that the extent of Plaintiff's complaints of pain were not entirely credible.
"It  must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task
particularly within the province of the ALJ who has had an opportunity to observe whether the person
seems to be disabled.'"  *Harrell*, 862 F.2d at 480 (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th
Cir. 1983)).

The Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain was based on the proper legal standards.  In addition, the Court finds that the ALJ's determination that Plaintiff's pain was not disabling is also supported by substantial evidence.

### F.       Conclusion

Based upon the foregoing, the Court finds that the ALJ's decision was based upon substantial evidence and was based upon an application of the proper legal standards.  Accordingly, the final decision of the Commissioner should be AFFIRMED.

## VII.  RECOMMENDATION

The Magistrate Court **RECOMMEND**S that the District Court **AFFIRM** the final decision of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct.

466, 472-74 (1985);  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

 The clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

 SIGNED this 4th day of May, 2006.


             _____
             ANDREW W. AUSTIN
             UNITED STATES MAGISTRATE JUDGE